1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLYN LEMELSON, et al. | CASE NO. C22-1202JLR |
| Plaintiffs, | ORDER |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## I.  INTRODUCTION

Before the court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss Plaintiffs Carolyn Lemelson and Pacific Doodles, LLC's ("Pacific Doodles") (collectively, "Plaintiffs") complaint.  (Mot. (Dkt. ## 4, 5-1[1]); Reply (Dkt. # 10).)  Plaintiffs oppose Wells Fargo's motion.  (Resp. (Dkt. # 9).)  The court has considered the

---

[1] Wells Fargo originally filed its motion to dismiss at docket entry 4.  (*See* Dkt.)  It subsequently filed a praecipe to replace its original motion with the corrected motion attached to that praecipe.  (*See* Praecipe (Dkt. # 5).)  The court cites the corrected motion in this order.

ORDER - 1

motion, all materials submitted in support of and in opposition to the motion, and the governing law.  Being fully advised,[2] the court GRANTS in part and DENIES in part Wells Fargo's motion to dismiss.  The court DISMISSES Plaintiffs' breach of contract and outrage claims without prejudice and with leave to amend.

## II.    BACKGROUND

On May 31, 2022, Ms. Lemelson was depositing funds at a Wells Fargo branch in Mount Vernon, Washington.  (Compl. (Dkt. # 1-1) ¶ 7.)  Plaintiffs allege that the bank's manager and security guard "verbally accosted" Ms. Lemelson's family, called the police, and falsely accused the family of trespass after "apparently taking issue with how Ms. Lemelson's significant other parked."  (*Id.* ¶ 8.)  Ms. Lemelson then instructed the bank manager to close her accounts.  (*Id.* ¶ 9.)  The bank manager, however, refused to close the accounts, and the police arrived to take statements.  (*Id.* ¶ 10.)

According to Ms. Lemelson, after this encounter, Wells Fargo made multiple unauthorized transfers of funds from her account and the account of her business, Pacific Doodles, to third parties who were not authorized to receive those funds.  (*Id.* ¶¶ 1, 11.)  Plaintiffs allege that these transfers "were not properly payable and were not properly charged against the subject account as required by RCW 62A.4-401."  (*Id.* ¶ 12.)  They further allege that the unauthorized transfers resulted in Plaintiffs missing payments, including real estate mortgage payments.  (*Id.* ¶ 13.)

---

[2] Wells Fargo requests oral argument on the motion.  (*See* Mot. at 1).  The court, however, concludes that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    Plaintiffs filed this lawsuit against Wells Fargo in Skagit County Superior Court on July 29, 2022.  (*See generally* Compl.)  They allege claims against Wells Fargo for breach of contract; unfair or deceptive business practices in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq.* ("WCPA"); and the tort of outrage. (*Id.* ¶¶ 14-27.)  On August 29, 2022, Wells Fargo timely removed the action to this court on the basis of diversity.  (Not. of Removal (Dkt. # 1).)  It filed the instant motion on September 6, 2022.  (Mot.)

## III.  ANALYSIS

Below, the court sets forth the legal standard for reviewing motions to dismiss before considering Wells Fargo's motion.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court is not, however, required to accept as true legal conclusions or "formulaic recitation[s] of the legal elements of a cause of action."  *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B.    Breach of Contract**

Plaintiffs allege that Wells Fargo breached an unspecified contract and "acted contrary to RCW 62A.4-401," a provision of Washington's codification of the Uniform Commercial Code ("UCC"),[3] by refusing to close their accounts when Ms. Lemelson instructed it to do so and by making unauthorized transfers of funds from Plaintiffs' accounts to other accounts. (Compl. ¶ 17.) Wells Fargo argues that the court must dismiss the claim because Plaintiffs failed to (1) identify any contractual provision that Wells Fargo allegedly breached and (2) allege that they reviewed their statements or notified the bank of the allegedly unauthorized transactions. (Mot. at 4, Reply at 4-8.)

The court begins with Wells Fargo's first argument. A plaintiff in a contract action must allege the existence of a valid contract between the parties, breach, and resulting damage. *See Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. 2000). Here, Plaintiffs allege only that "there existed and exists a valid contract between" themselves and Wells Fargo; they do not identify the contract or the contractual provision or provisions that they allege Wells Fargo breached. (Compl. ¶ 15; *see generally id.*) Because the court need not accept as true Plaintiffs' "formulaic recitation" of the first element of their breach of contract claim, *Chavez*, 683 F.3d at 1008, the court

---

[3] Plaintiffs appear to base their claim on RCW 62A.4-401(a), which states "[a]n item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank." RCW 62A.4-401(a).

1 | agrees with Wells Fargo that Plaintiffs have failed to state a claim on which relief can be granted.

Wells Fargo's second argument rests on the Washington Supreme Court's decision in *Travelers Casualty & Surety Co. v. Washington Trust Bank*, 383 P.3d 512, 520-21 (Wash. 2016). Although that case dealt with whether the claim at issue was time-barred, the Court observed that RCW 62A.4-406(f)'s "requirement that customers notify banks of unauthorized signatures, alterations, or indorsements is a condition precedent to bringing suit" under RCW 62A.4-401(a). *Id.* (citing cases so holding). Because Plaintiffs did not allege that they completed these conditions precedent (*see generally* Compl.), the court agrees that Plaintiffs' claim also fails on this ground. Therefore, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' breach of contract claim and DISMISSES the claim without prejudice and with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))).

### C.  Unfair or Deceptive Business Practices

The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To prevail under the WCPA, a plaintiff must show that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the

defendant. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533-34 (Wash. 1986).  A WCPA claim "may be predicated on a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).  "[A] per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Hangman Ridge*, 719 P.2d at 535.

Plaintiffs allege that Wells Fargo engaged in unfair or deceptive acts or practices by refusing to close their accounts when instructed to do so and by making unauthorized transfers of funds in violation of their contracts and RCW 62A.4-401.  (Compl. ¶¶ 19-23.)  Wells Fargo argues that Plaintiffs' claim must be dismissed because they failed to allege that they complied with their duty under RCW 62A.4-406 to examine their bank account statements and promptly notify Wells Fargo of the unauthorized transfers.  (Mot. at 5 (citing *U.S. Bank, N.A. v. Whitney*, 81 P.3d 135, 140 (Wash. Ct. App. 2003)).)  As a result, according to Wells Fargo, Plaintiffs have failed to adequately allege a per se violation of the WCPA based on Wells Fargo's purported violation of RCW 62A.4-401.  (*Id.*; *see also* Reply at 2.)

Plaintiffs counter that they do not base their claim solely on an alleged per se violation of the WCPA.[4]  (*See* Resp. at 3-4.)  Rather, as they correctly point out, they can

---

[4] Nor could they, because the Washington legislature has not declared that a violation of the UCC constitutes a per se violation of the WCPA.  *See McClellon v. Bank of Am., N.A.*, No.

1 also prove a WCPA violation by showing either that Wells Fargo's conduct had the
2 capacity to deceive a substantial portion of the public or was an unfair or deceptive act or
3 practice in violation of the public interest.  (*Id.* at 3 (citing *Klem*, 295 P.3d at 1187).)  In
4 addition, Wells Fargo addresses only Plaintiffs' allegation that it violated the WCPA by
5 violating RCW 62A.4-401; it does not address their separate allegation that Wells
6 Fargo's failure to close their accounts when Ms. Lemelson asked it to do so is an unfair
7 or deceptive act or practice.  (*See* Mot. at 5; *see also* Reply at 5 (stating, without citation
8 to authority, that Plaintiffs cannot allege any damages caused by Wells Fargo's refusal to
9 close their accounts separate from the alleged unauthorized transfer of funds).)  Because
10 Wells Fargo moves to dismiss solely on the ground that Plaintiffs failed to adequately
11 allege a per se violation of RCW 62A.4-401, the court DENIES Wells Fargo's motion to
12 dismiss Plaintiffs' WCPA claim.

13 **D.   Outrage**

14 "The elements of a claim for the tort of outrage or the intentional infliction of
15 emotional distress are '(1) extreme and outrageous conduct, (2) intentional or reckless
16 infliction of emotional distress, and (3) actual result to plaintiff of severe emotional
17 distress.'" *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018) (quoting
18 *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003)).  Qualifying "conduct must be 'so
19 outrageous in character, and so extreme in degree, as to go beyond all possible bounds of
20 decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

C18-0829JCC, 2018 WL 4852628, at *5 (W.D. Wash. Oct. 5, 2018) (citing *Haner v. Quincy Farm Chemicals, Inc.*, 649 P.2d 828, 833 (Wash. 1982)).

community.'" *Id.* (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)).  The conduct must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel*, 66 P.3d at 632 (quoting *Reid v. Pierce Cnty.*, 961 P.2d 333, 337 (Wash. 1998)).  Indeed, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008), *as amended* (July 15, 2008) (citing Restatement (Second) of Torts § 46 cmt. j, at 77 (Am. Law Inst. 1965)).  Thus, "the tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" because the law expects plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration." *Kloepfel*, 66 P.3d at 632 (quoting *Grimsby*, 530 P.2d at 295).

      Plaintiffs allege that Wells Fargo's manager and security personnel "engaged in extreme and outrageous conduct [by] accosting Ms. Lemelson's young family in the parking lot of the bank and falsely accusing them, including the young children, of trespass and calling the police, and causing the police to appear." (Compl. ¶ 25.)  This conduct, according to Plaintiffs, "recklessly or intentionally inflicted emotional distress upon Ms. Lemelson" and caused her damages. (*Id.* ¶¶ 26-27.)  Wells Fargo contends that the claim must be dismissed because the alleged acts of its bank manager and security personnel are not sufficiently "outrageous in character, and extreme in degree" to support an outrage claim. (Mot. at 6-7.)  The court agrees.  The conduct Plaintiffs describe in their complaint is not so outrageous or extreme as to "as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby*, 530 P.2d at 295. Indeed, Washington cases allowing an outrage claim to proceed involve acts that are far more extreme than those alleged here. *See, e.g.*, *id.* at 295-96 (allowing claim to proceed where plaintiff pleaded he had to "witness the terrifying agony and explicit pain and suffering of his wife while she [p]roceeded to die right in front of his eyes" as a result of doctor's failure to provide medical care); *Spicer v. Patnode*, 443 P.3d 801, 809 (Wash. Ct. App. 2019) (allowing claim to proceed where neighbor persistently harassed plaintiff for months with the intent to cause plaintiff severe emotional distress by remote-starting his truck and setting off its alarm whenever her piano students walked to or from lessons). Contrary to Plaintiffs' assertions (*see* Resp. at 6), the mere presence of Ms. Lemelson's children during the alleged encounter is not enough, without more, to plausibly allege that Wells Fargo's employees' conduct met the threshold required to state an outrage claim. Accordingly, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' outrage claim and DISMISSES that claim without prejudice and with leave to amend. *See Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Wells Fargo's motion to dismiss (Dkt. ## 4, 5-1) and DISMISSES Plaintiffs' breach of contract and outrage claims without prejudice and with leave to amend. Plaintiffs may file an amended complaint that addresses the deficiencies identified in this order by no later than Friday, October 14, 2022. Failure to timely file an amended complaint that addresses

these deficiencies will result in the dismissal of Plaintiffs' breach of contract and outrage claims with prejudice.

Dated this 3rd day of October, 2022.

JAMES L. ROBART
United States District Judge

ORDER - 10