UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLYN LEMELSON, et al., | CASE NO. C22-1202JLR |
| Plaintiffs, | ORDER |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## I. INTRODUCTION

Before the court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss Plaintiffs Carolyn Lemelson and Pacific Doodles, LLC's ("Pacific Doodles") (collectively, "Plaintiffs") amended complaint. (Mot. (Dkt. # 15); Reply (Dkt. # 19).) Plaintiffs oppose Wells Fargo's motion. (Resp. (Dkt. # 17).) The court has considered the motion, all materials submitted in support of and in opposition to the motion, and the

ORDER - 1

governing law. Being fully advised,[1] the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' amended complaint and DISMISSES Plaintiffs' claims with prejudice.

## II. BACKGROUND

On May 31, 2022, Ms. Lemelson was depositing funds at a Wells Fargo branch in Mount Vernon, Washington. (Am. Compl. (Dkt. # 13) ¶ 7.) Plaintiffs allege that the bank's manager and security guard "verbally accosted" Ms. Lemelson's family, "with two small children present," called the police, and falsely accused the family of trespass after "apparently taking issue with how Ms. Lemelson's significant other parked." (Id. ¶ 8.) Ms. Lemelson then instructed the bank manager to close her accounts, "as she had the right to do under RCW 62A.4-403(a)." (Id. ¶ 9.) The bank manager, however, refused to close the accounts as the police arrived to take statements. (Id. ¶ 10.)

According to Ms. Lemelson, after this encounter, Wells Fargo made multiple unauthorized transfers of funds from her account and the account of her business, Pacific Doodles, to third parties who were not authorized to receive those funds. (Id. ¶¶ 1, 11.) Plaintiffs allege that these transfers "were not properly payable and were not properly charged against the subject account as required by RCW 62A.4-401." (Id. ¶ 12.) They further allege that the unauthorized transfers resulted in Plaintiffs missing payments, including real estate mortgage payments. (Id. ¶ 13.)

---

[1] Wells Fargo requests oral argument on the motion; Plaintiffs do not. (See Mot. at 1; Resp. at 1.) The court, however, concludes that oral argument would not be helpful to its disposition of the motion. See Local Rules W.D. Wash. LCR 7(b)(4).

Plaintiffs filed this lawsuit against Wells Fargo in Skagit County Superior Court on July 29, 2022, alleging claims against Wells Fargo for breach of contract; unfair or deceptive business practices in violation of the Washington Consumer Protection Act, RCW 19.86.010 *et seq.* ("WCPA"); and the tort of outrage. (Compl. (Dkt. # 1-1) ¶¶ 14-27.) On August 29, 2022, Wells Fargo timely removed the action to this court on the basis of diversity jurisdiction. (Not. of Removal (Dkt. # 1).)

On October 3, 2022, the court granted in part and denied in part Wells Fargo's motion to dismiss Plaintiffs' original complaint. (10/3/22 Order (Dkt. # 12); *see* 1st MTD (Dkt. # 5-1).) First, the court dismissed Plaintiffs' breach of contract claim with leave to amend because Plaintiffs did not identify the contract or contractual provision(s) that they alleged Wells Fargo breached and because Plaintiffs did not allege that they completed the conditions precedent to maintain a claim under RCW 62A.4-401(a). (10/3/22 Order at 4-5.) Second, the court denied Wells Fargo's motion to dismiss Plaintiffs' WCPA claim because it moved to dismiss solely on the ground that Plaintiffs failed to adequately allege a per se violation of the WCPA based on a violation of RCW 62A.4-401. (*Id.* at 5-7.) Finally, the court dismissed Plaintiffs' outrage claim with leave to amend because Plaintiffs did not sufficiently allege conduct by Wells Fargo that was so "outrageous in character, and so extreme in degree" as to impose liability. (*Id.* at 7-9 (quoting *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018)).) The court warned Plaintiffs that failure to timely file an amended complaint that addressed the deficiencies identified in its order would result in the dismissal of Plaintiffs' breach of contract and outrage claims with prejudice. (*Id.* at 9-10.)

Plaintiffs timely filed their amended complaint on October 14, 2022, again bringing claims against Wells Fargo for breach of contract, unfair or deceptive business practices, and the tort of outrage. (*See generally* Am. Compl.) They also added a new claim for conversion. (*See id.*) Wells Fargo filed the instant motion to dismiss Plaintiffs' amended complaint on October 26, 2022. (Mot.)

### III. ANALYSIS

Below, the court sets forth the legal standard for reviewing motions to dismiss before considering Wells Fargo's motion.

**A.    Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is not, however, required to accept as true legal conclusions or "formulaic recitation[s] of the legal elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A district court that dismisses a claim under Rule 12(b)(6) should generally grant leave to amend, "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The court has especially broad discretion to grant or deny leave to amend where the plaintiff has already filed an amended complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).

**B.    Breach of Contract**

Plaintiffs allege that Wells Fargo breached its "standard depository account contract" and "acted contrary to RCW 62A.4-401," a provision of Washington's codification of the Uniform Commercial Code ("UCC"), by refusing to close their accounts when Ms. Lemelson instructed it to do so and by making unauthorized transfers of funds from Plaintiffs' accounts to other unspecified accounts. (Am. Compl. ¶¶ 15-17.) Plaintiffs appear to base their claim on RCW 62A.4-401(a), which states:

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.

RCW 62A.4-401(a).

Wells Fargo contends that Plaintiffs' amended complaint still does not plausibly allege a breach of contract claim because, although Plaintiffs now allege that Wells Fargo breached its "standard depository account contract," they have not identified the contractual provision or provisions that they allege Wells Fargo breached. (Mot. at 4-5

(citing 10/3/22 Order at 4).) They further argue that Plaintiffs still have not alleged that they met the conditions precedent to maintain a claim under RCW 62A.4-401. (*Id.* at 5-7 (citing 10/3/22 Order at 4).)

As it did in its prior order, the court begins with Wells Fargo's first argument. A plaintiff in a contract action must allege the existence of a valid contract between the parties, breach, and resulting damage. *See Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000). A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant. *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). Here, although Plaintiffs now allege that their interactions with Wells Fargo were governed by Wells Fargo's "standard depository account contract," they neither provide a copy of the contract nor identify the contractual provision or provisions that they allege Wells Fargo breached.[2] (Am. Compl. ¶¶ 15-17.) Because Plaintiffs provide neither the contract nor the terms that they allege were breached, the court cannot determine what duties that contract imposes on Wells Fargo and whether Wells Fargo breached those duties. Indeed, Plaintiffs acknowledge that the contract is silent regarding the alleged conduct. (Resp. at 3 (stating that "Wells Fargo's standard depository contract does not specifically forbid diverting funds from a customer's account").) Plaintiffs ask

---

[2] Plaintiffs protest that they were unable to obtain a copy of the contract and attach it to their amended complaint due to health issues suffered by Ms. Lemelson and her attorney before they filed the amended complaint. (Resp. at 2.) Counsel, however, should have obtained the contract that Plaintiffs allege was breached as part of their due diligence and investigation before filing a claim for breach of contract. *See* Fed. R. Civ. P. 11(b).

the court, therefore, to either "incorporate[] into the contract" RCW 62A.4-401 and RCW 30A.22.090 (stating that "during the lifetime of a depositor . . . funds on deposit in a single account belong to the depositor") or infer a "term which is reasonable in the circumstances" to enforce the contract against Wells Fargo.  (Resp. at 3-4 (quoting *Estate of Carter v. Carden*, 455 P.3d 197, 202 (Wash. Ct. App. 2019)).)  The court declines Plaintiffs' invitation to infer or incorporate additional terms into a contract that it has never seen.  *See Estate of Carter*, 455 P.3d at 203-05 (discussing in detail the terms of the contract at issue).  Accordingly, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' breach of contract claim.  Because the court has already given Plaintiffs an opportunity to cure the deficiencies in their breach of contract claim, the court DISMISSES the claim with prejudice.  *See Lopez*, 203 F.3d at 1127.

Wells Fargo's second argument appears to depend on construing Plaintiffs' purported breach of contract claim as also alleging a claim for a violation of RCW 62A.4-401.  Plaintiffs first argue that RCW 62A.4-406(f)'s requirement that "customers notify banks of unauthorized signatures, alterations, or indorsements [as] a condition precedent to bringing suit" under RCW 62A.4-401(a), *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, 383 P.3d 512, 520-21 (Wash. 2016), does not apply because Wells Fargo does not allege that it suffered a "loss."  (Resp. at 4-5.)  The requirement that the bank prove a loss, however, appears in RCW 62A.4-406(d)(1); RCW 62A.4-406(f) does not include any such requirement.  *See* RCW 62A.4-406(d)(1), (f).

Plaintiffs also argue that RCW 62A.4-406(f)'s notice requirement does not apply because they do not allege that Wells Fargo transferred the funds from their accounts

based on an instrument with an "unauthorized signature or alteration." (Resp. at 4-5 (quoting RCW 62A.4-406(d)(1)).) But under Article 4-401 of the UCC, "[a]n item is properly payable when it is signed with a genuine or authorized signature of the drawer, and all indorsements are genuine or authorized, or otherwise effective, as by operation of a rule of preclusion or the impostor rule." 6C Ronald A. Anderson & Lary Lawrence, *Anderson on the Uniform Commercial Code* § 4-401:55 (3d. ed. 2000) (cited with approval by *Travelers Cas. & Sur. Co.*, 383 P.3d at 521). And an "item" within the meaning of Article 4 of the UCC is "an instrument or a promise or order to pay money handled by a bank for collection or payment." RCW 62A.4-104(a)(9). Plaintiffs do not explain which "items" were not "properly payable," why they were not "properly payable," or how the transactions they challenge violated RCW 62A.4-401 if they were not based on an instrument with an unauthorized signature or alteration. (*See generally* Am. Compl.; Resp.) Thus, because Plaintiffs again failed to allege that they reviewed their statements and notified the bank of any alleged unauthorized transactions as required by RCW 62A.4-406(f), the court DISMISSES their claim for violation of RCW 62A.4-401(a) with prejudice. *See Lopez*, 203 F.3d at 1127.

C.      **Unfair or Deceptive Business Practices**

The WCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To prevail under the WCPA, a plaintiff must show that (1) an unfair or deceptive act or practice, (2) occurred in the course of trade or commerce, (3) impacted the public interest, (4) injured the plaintiff's business or property, and (5) was caused by the

defendant. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533-34 (Wash. 1986). A WCPA claim "may be predicated on a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). The court has already held that Plaintiffs cannot establish a per se violation because the Washington legislature has not declared that a violation of the UCC constitutes a per se violation of the WCPA. (10/3/22 Order at 6 n.4 (citing *McClellon v. Bank of Am., N.A.*, No. C18-0829JCC, 2018 WL 4852628, at *5 (W.D. Wash. Oct. 5, 2018)).) Plaintiffs must, therefore, plausibly allege another ground for the public interest element of their WCPA claim.

"Where an unfair or deceptive act or practice is not based on a statutory violation, a plaintiff must show that 'the alleged act had the capacity to deceive a substantial portion of the public.'" *McClellon*, 2018 WL 4852628, at *5 (quoting *Hangman Ridge*, 719 P.2d at 535). "An alleged deceptive act or practice does not meet this requirement if it is 'unique to the relationship between plaintiff and defendant.'" *Id.* (quoting *Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. Ct. App. 2012)). Thus, "[t]o establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Behnke*, 294 P.3d at 737 (quoting *Michael v. Mosquera–Lacy*, 200 P.3d 695, 700 (Wash. 2009)). "[I]t is the likelihood that additional plaintiffs have been or will be

injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge*, 719 P.2d at 538.

Here, Plaintiffs allege that Wells Fargo engaged in unfair or deceptive acts or practices by refusing to close their accounts when Ms. Lemelson instructed it do so on May 31, 2022, and by subsequently making unauthorized transfers of funds in violation of their contracts and RCW 62A.4-401.  (Am. Compl. ¶¶ 21-23.)  They further summarily allege that these actions by Wells Fargo "pose[] a risk of repetition." (*Id.*)  As Wells Fargo points out, however, Plaintiffs' WCPA claim, as alleged, arises out of circumstances that are unique to the relationship between Plaintiffs and Wells Fargo:  a dispute about parking; Wells Fargo's act of calling the police regarding the dispute; Wells Fargo's refusal to close the accounts as police arrived to take statements; and Wells Fargo's subsequent retaliatory acts of making unauthorized transfers of funds from Plaintiffs' accounts.  (Mot. at 8-10; *see* Am. Compl. ¶¶ 7-13, 19-24; *see also id.* ¶ 26 (alleging that Wells Fargo "vindictively refuse[d] to follow customer instructions to close Plaintiffs' accounts and ma[de] unauthorized transfers from" those accounts).)  In response, Plaintiffs argue that "either Wells Fargo's mistreatment of Plaintiffs was unique, in which case Plaintiffs' 'outrage' claim has a good chance of success, or Wells Fargo (at least at that particular branch) often treats its customers this way, in which case there is a likelihood of repetition."  (Resp. at 6.)  This is a false dichotomy.  That conduct may be "unique" to a specific customer does not mean that the conduct is sufficiently "extreme and outrageous" to meet the high bar necessary to state a claim for outrage.  (*See infra* Section III.D.)  Because the amended complaint fails to include facts which, if

accepted as true, would plausibly establish that Wells Fargo's acts are capable of repetition and thus affect the public interest, Plaintiffs do not state a claim for violation of the WCPA. For this reason, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' WCPA claim. Because the court finds that an amendment to the claim would be futile, the court DISMISSES the claim with prejudice. *See Lopez*, 203 F.3d at 1127.

**D.     Outrage**

"The elements of a claim for the tort of outrage or the intentional infliction of emotional distress are '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018) (quoting *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003)). Qualifying "conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)). The conduct must be such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!'" *Kloepfel*, 66 P.3d at 632 (quoting *Reid v. Pierce Cnty.*, 961 P.2d 333, 337 (Wash. 1998)). Indeed, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008), *as amended* (July 15, 2008) (citing Restatement (Second) of Torts § 46 cmt. j, at 77 (Am. Law Inst. 1965)). Thus, "the tort of outrage 'does not extend to mere insults, indignities, threats, annoyances, petty

oppressions, or other trivialities'" because the law expects plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration." *Kloepfel*, 66 P.3d at 632 (quoting *Grimsby*, 530 P.2d at 295). Although the question of whether conduct is sufficiently outrageous is ordinarily for the jury, it is "initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989).

As they did in their initial complaint, Plaintiffs allege that Wells Fargo's manager and security personnel "engaged in extreme and outrageous conduct [by] accosting Ms. Lemelson's young family in the parking lot of the bank and falsely accusing them, including the young children, of trespass and calling the police, and causing the police to appear." (Am. Compl. ¶ 26.) In their amended complaint, they further allege that Wells Fargo "exacerbated its conduct by vindictively refusing to follow customer instructions to close Plaintiffs' accounts and making unauthorized transfers from Plaintiffs' accounts." (*Id.*) This conduct, according to Plaintiffs, "recklessly or intentionally inflicted emotional distress upon Ms. Lemelson and her children" and caused Ms. Lemelson damages. (*Id.* ¶¶ 27-28.)

Wells Fargo contends that Plaintiffs' added allegations that Wells Fargo refused to close and made unauthorized transfers from their bank accounts are not enough to establish that Wells Fargo's conduct was sufficiently "outrageous in character, and extreme in degree" to support an outrage claim. (Mot. at 10-12.) Plaintiffs respond that "to give [a] customer no practical choice but to keep coming back" after having been rude to and calling the police on that customer and to "harass the customer by stealing

funds" should be enough to survive the motion to dismiss. (Resp. at 5.) The court, however, agrees with Wells Fargo. The conduct Plaintiffs describe in their amended complaint is the same conduct they described in their initial complaint, simply repeated in the "outrage" section of the amended complaint. (*Compare* Compl. ¶¶ 7-13, 24-27; *with* Am. Compl. ¶¶ 7-13, 25-28.) This conduct, again, is not so outrageous or extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Grimsby*, 530 P.2d at 295, particularly when compared with the types of conduct that courts have found to meet the outrage threshold (*see* 10/3/22 Order at 9 (citing cases)). Accordingly, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' outrage claim and DISMISSES that claim with prejudice and without leave to amend. *See Lopez*, 203 F.3d at 1127.

**E.     Conversion**

Plaintiffs added a new claim for conversion in their amended complaint. (Am. Compl. ¶¶ 29-34.) They allege that they "entrusted money to [Wells Fargo] on the understanding that they had the right to withdraw their deposited funds at-will"; that Wells Fargo "was obliged to return the deposited funds at Plaintiffs' direction"; and that Wells Fargo "wrongly interfered with Plaintiffs' ownership of their deposited funds by [(1)] refusing to close the accounts upon Plaintiffs' instruction"; (2) "retaining Plaintiffs' deposited funds after being directed to close the accounts"; and (3) "disbursing [the funds] to third parties without Plaintiffs' authorization." (*Id.*)

Wells Fargo argues that Plaintiffs' conversion claim must be dismissed because "(1) the UCC displaces the common law with respect to issues of unauthorized

transactions involving deposit accounts and related banking products; (2) the independent duty doctrine bars Plaintiffs' conversion claim; and (3) funds held in a deposit account cannot be converted." (Mot. at 15.) Plaintiffs respond only to Wells Fargo's first argument that the UCC displaces common-law claims relating to bank accounts and assert that they pleaded the conversion claim in the alternative in case Wells Fargo proves that their bank accounts "fail to qualify for protection under the UCC." (Resp. at 6-7.) They do not address Wells Fargo's second and third arguments. (*Id.*)

"A conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 143 F.3d 502, 506 (9th Cir. 1998) (quoting *Pub. Util. Dist. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (1985)). The tort "traditionally involves wrongful taking and carrying away of something tangible." *Id.* Thus, "bank accounts generally cannot be the subject of conversion, because they are not specific money, but only an acknowledgment by the bank of a debt to its depositor." *Id.*; *see also Peters v. Sjoholm*, 631 P.2d 937, 940 (Wash. 1981) ("Once money is deposited in general bank account, title to the money passes to the bank, and the bank and the depositor assume the relationship of debtor and creditor, respectively."). Plaintiffs offer no authority to the contrary. Therefore, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' conversion claim. (*See generally* Resp.) Because the court finds that amendment of the claim would be futile, the court DISMISSES the claim with prejudice.

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Wells Fargo's motion to dismiss Plaintiffs' amended complaint (Dkt. # 15). Plaintiffs' claims are DISMISSED with prejudice.

Dated this 21st day of November, 2022.

JAMES L. ROBART
United States District Judge